ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 SEP 27 PM 4:02
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WAYMON GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-023 |
| | ) | |
| WHEELER CORRECTIONAL | ) | |
| FACILITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at the Phillips State Prison in Buford, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

### I. BACKGROUND

Plaintiff names the following Defendants in his complaint: (1) Wheeler Correctional Facility("WCF"); (2) Ralph Kemp, the Warden of WCF ("Kemp"); (3) Mr. Rosier, another Warden at WCF ("Rosier"); (4) Ms. Lane, a correctional officer at WCF at the time of the

---

[1] Although he is currently incarcerated at Phillips State Prison, Plaintiff's complaint concerns events that allegedly occurred at Wheeler Correctional Facility in Alamo, Georgia.

events at issue ("Lane");[2] and (5) Ms. Harrell, who is also a correctional officer at WCF ("Harrell"). (Doc. no. 1, pp. 1, 4.)

### A. Allegations Against Lane

Plaintiff alleges that during his confinement at WCF, he was falsely accused of committing a violation and sent to "segregation" on December 18, 2009. (Id. at 5.) Plaintiff remained in segregation until December 24th, when he was placed in "500D dorm." (Id.) On that day, Lane told Plaintiff that he was going back to segregation, but when Plaintiff stated that he would report her to Warden Rosier for doing so, she allegedly returned some time later, cursed him loudly, and called him a "snitch." (Id. at 6.) Plaintiff alleges that Lane also stated that while he was in segregation he got caught "with some black x miles," which Plaintiff claims to have received from Lane. (Id.) Plaintiff alleges that Lane's actions put his life "in jeopardy." (Id.) Although the complaint is somewhat unclear, Plaintiff appears to point to a subsequent assault by four inmates as the consequence of being labeled a snitch. (See id. at 6-7.)

### B. Allegations Against Harrell

After his encounter with Lane, Plaintiff remained in 500D for the next several days, but felt that he was in physical danger, and made requests on both December 28th and 29th to Harrell that she transfer him out of 500D, or give him a statement form so that he could sign himself into "P.C." (protective custody), but that she refused. (Id. at 6-7.) Plaintiff also states that he made the same requests to Unit Manager Wright, who told Harrell to move Plaintiff, but that she nevertheless refused. (Id. at 6.) Plaintiff took matters into his own hands on

---

[2]Plaintiff indicates in his complaint that Lane was since terminated from employment at WCF. (Doc. no. 1, p. 7.)

2

December 30th, when he attempted to pack his things and unilaterally return to segregation. (Id. at 6-7.) Harrell threatened Plaintiff that if he left, she would "see that [he] never move[d] back to 500 unit and write [him] a D.R." (Id. at 7.) Plaintiff also alleges that when other officers questioned Harrell's decision not to move him, he overheard her state that she did not have any more beds. (Id.)

Two weeks later, on January 14, 2010, Plaintiff alleges that after he left the mess hall, he was assaulted by four inmates with weapons "while staff members stood around and watched."[3] (Id. at 7, 11.) Plaintiff alleges that he suffered serious injuries to his head and right eye as a result of the assault, and that he needed surgery to repair his eye socket and save his right eye. (Id. at 8; see id. at 10.)

### C. Allegations Against Rosier

After filing a grievance about the assault, Plaintiff alleges that on February 10, 2010 Warden Rosier and another staff member called Plaintiff to Rosier's office, where they threatened Plaintiff that if he did not drop his grievance, he would be transferred "somewhere else," and would not have the surgery to save his eye or repair his eye socket. (Id. at 9.) Fearing retribution, Plaintiff alleges that he later dropped his grievance, but that he was nevertheless transferred out of WCF, and that he was denied the surgery he needed as a result.[4] (Id. at 9-10.) Plaintiff alleges that he has lost his right eye and that his eye socket is now deformed. (Id. at 10.)

---

[3] Plaintiff lists the staff members who were present at the assault, although only one of them – Harrell – is named as a Defendant in this action. (See doc. no. 1, p. 8.)

[4] Plaintiff also indicates that filed a second grievance, but that WCF refused to accept it. (Id. at 4.)

3

## II. DISCUSSION

### A. Failure to State a Claim Against Defendant Kemp

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against Kemp.

First, Plaintiff does not mention Kemp in his complaint aside from naming him in the caption of the complaint. However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of this Defendant and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against Kemp. On that basis, Kemp should be dismissed.

Moreover, Plaintiff's claims against Kemp are also inadequate to the extent that Plaintiff is attempting to hold him responsible for the acts of the other Defendants. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193

F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, the only mention of Kemp is in the caption of Plaintiff's complaint, and nowhere does Plaintiff mention that Kemp actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a "causal connection" between this Defendant and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v.

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

5

Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Kemp, and has therefore failed to state a claim upon which relief may be granted against Kemp.

### B. Failure to State a Claim Against Defendant WCF

Plaintiff's allegations are insufficient to state a claim against WCF, which is not subject to liability in a § 1983 suit such as this one. According to Fed. R. Civ. P. 17(b)(3), the general rule is that the "capacity to sue or be sued is determined . . . by the law of the state where the court is located. . . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 258 Ga. 317, 368 S.E.2d 500, 502 (1988) (quotation omitted).

Plaintiff has not shown, and the Court is not aware of, any applicable precedent for recognizing a state prison as an entity capable of being sued for violation of § 1983, and other federal courts in Georgia confronted with similar suits have determined that jails and prisons are not legal entities subject to liability in § 1983 claims. E.g., Sebastian v. Maynard, 2010 U.S. Dist. LEXIS 86017, at *4 (M.D. Ga. July 12, 2010) (holding that county detention center "is not a legal entity that is subject to suit under 42 U.S.C. § 1983"); Bolden v. Gwinnett County Det. Ctr. Med. Admin. Med. Doctors, 2009 U.S. Dist. LEXIS 71419, at *2 (N.D. Ga.

6

Aug. 12, 2009) ("Jails . . . are not legal entities subject to suit under § 1983 at all."). In accordance with these decisions and Plaintiff's failure to show that WCF is subject to a § 1983 suit, the Court finds that WCF is not subject to liability for any of the allegations in Plaintiff's complaint.[6] Plaintiff has therefore failed to state a claim against Defendant WCF, and it should be dismissed from this case.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that WCF and Kemp be **DISMISSED** from this case.[7]

SO REPORTED and RECOMMENDED this 27th day of September, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] Even if WCF were capable of being sued for violating § 1983, it could not be held liable for the actions of the other Defendants on the basis of *respondeat superior*, and Plaintiff has failed to allege that WCF, as an entity, actually participated in or was causally connected to the alleged constitutional violations. See Hartley, 193 F.3d at 1269 (11th Cir. 1999). Thus, a claim against WCF would be subject to dismissal even if WCF were capable of being sued in a § 1983 claim.

[7] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendant Lane based on Plaintiff's Eighth Amendment claim of exposure to conditions posing a substantial risk of serious harm; on Defendant Harrell based on Plaintiff's Eight Amendment claims of deliberate indifference to his safety and failure to intervene; and on Defendant Rosier based on Plaintiff's Eighth Amendment claim for deliberate indifference to his health and First Amendment claim for retaliation for filing a grievance.

7